**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henry Wheat,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-21-00469-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Henry Wheat's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 15, "Pl. Br."), Defendant Social Security Commissioner's Answering Brief (Doc. 16, "Def. Br."), and Plaintiff's Reply Brief (Doc. 19, "Reply"). The Court has reviewed the briefs and the Administrative Record (Doc. 14, "R.") and affirms the Administrative Law Judge's decision denying benefits (R. at 28–41) as upheld by the Appeals Council (R. at 10–12).

**I.    BACKGROUND**

Plaintiff filed the instant application for Title II Social Security Disability Insurance ("SSDI") Benefits on December 26, 2018, for a period of disability beginning August 10, 2016. (R. at 186–88.) Plaintiff's claims were denied initially on March 12, 2019, and upon reconsideration on May 17, 2019. (R. at 28.)

On June 30, 2020, Plaintiff testified at a telephonic hearing before an Administrative Law Judge ("ALJ"). (R. at 28.) Upon consideration of the medical records, opinions, and testimony before her, the ALJ denied Plaintiff's Application in a fourteen-page decision dated August 17, 2020. (R. at 28–41.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 10, 2016. (R. at 30.) The ALJ further determined that Plaintiff had the following severe impairments: hypertension, diabetes, obesity, heart murmur, attention deficit hyperactivity disorder (ADHD), depression and anxiety. (R. at 30.) The ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31.) The ALJ considered Plaintiff's residual function capacity ("RFC") and found that although Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 34.) The ALJ found that Plaintiff had the RCF to perform light work as defined in 20 C.F.R. § 404.1567(b), except he should "avoid work around hazards" and "perfume [sic] simple, routine work involving simple work related decisions and simple instructions not involving public contact with few changes in the work setting." (R. at 33.) On January 21, 2021, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (R. at 10–12.) Plaintiff filed this action on March 18, 2021. (Doc. 1.)

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. The issues presented for review are whether the ALJ (1) failed to properly address the medical opinions; (2) improperly rejected Plaintiff's symptom testimony; (3) improperly rejected lay witness testimony; and (4) erred in relying on vocational testimony given in response to an incomplete hypothetical question.

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ follows a five-step process to determine whether a claimant is disabled for purposes of the Act. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff raises four arguments for the Court's consideration: (1) the ALJ improperly rejected the medical opinions of Plaintiff's examining physician, Brent Geary, Ph.D. ("Dr. Geary"); (2) the ALJ improperly rejected Plaintiff's symptom testimony; (3) the ALJ improperly rejected the lay witness testimony of Plaintiff's wife, Lakita Wheat ("Ms. Wheat"); and (4) the ALJ's step-five finding is not supported by substantial evidence because the vocational expert's testimony was given in response to an incomplete hypothetical question. (Pl. Br. at 7–18.) In its responsive brief, Defendant counters Plaintiff's arguments, arguing that the ALJ's decision was supported by substantial evidence and that the ALJ properly evaluated the medical evidence and Plaintiff's symptom testimony, and did not commit reversible error in evaluating Ms. Wheat's testimony. (Def. Br. at 7–24.) In reply, Plaintiff again asserts each of his four arguments and further argues the ALJ failed to apply the correct legal standards. (Reply at 2–9.) Plaintiff requests the case be remanded for an award of benefits, or for a de novo hearing and new decision. (Pl. Br. at 19.) The Court considers Plaintiff's four arguments in turn.

### A. The ALJ Did Not Err In Evaluating the Medical Opinion Evidence, Including the Opinion of Dr. Geary.

In their briefing, the parties dispute whether the ALJ applied the correct standards in evaluating the medical opinion evidence. Long-standing Ninth Circuit precedent required ALJs to give deference to certain medical opinions based on the physician's relationship with the claimant. *See, e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The Ninth Circuit afforded greater weight to the opinion of a treating physician, reasoning that a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Id.* (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). The Ninth Circuit held that "[t]he opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted).

However, in 2017, the SSA amended the regulations governing the evaluation of medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). The new regulations apply to applications, such as Plaintiff's, that were filed on or after March 27, 2017. *Id.* The new regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a).

At the time the parties submitted their briefing, there was some question as to whether the SSA's new regulations displaced the Ninth Circuit precedent governing the evaluation of medical opinion evidence. *See, e.g.*, *Pennock v. Comm'r of Soc. Sec.*, No. CV-19-08191-PCT-DWL, 2020 WL 6796768, at *3 (D. Ariz. Nov. 19, 2020) ("Whether the so-called 'treating physician rule' remains valid in light of the 2017 regulations appears to be an open question in the Ninth Circuit."). Plaintiff maintained that the Ninth Circuit's precedent remains "unchanged by any change in agency regulations." (Pl. Br. at 8.) Defendant countered that the new regulations supersede the prior caselaw. (Def. Br. at 13.)

The Ninth Circuit has since resolved the issue. In *Woods v. Kijakazi*, the Ninth Circuit held that the new regulations supersede its prior caselaw establishing a hierarchy of medical opinion evidence and affording deference to the opinions of examining or treating physicians. 32 F.4th 785, 790–92 (9th Cir. 2022). The court of appeals held that its prior requirement that ALJs provide "specific and legitimate reasons" for rejecting the opinion of a treating or examining doctor is incompatible with the revised regulations. *Id.* Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

- 5 -

Plaintiff argues that the ALJ improperly rejected the opinion of his examining physician, Dr. Geary, by not providing specific and legitimate reasons for doing so. (Pl. Br. at 7–14.) As noted, however, the new regulations supersede the prior Ninth Circuit caselaw that required ALJs to provide specific and legitimate reasons for rejecting an examining physician's opinions. Nevertheless, the Court cannot affirm the ALJ's rejection of Dr. Geary's opinions if the ALJ failed to provide an explanation supported by substantial evidence. *See Woods*, 32 F.4th at 792. Defendant argues that the ALJ's evaluation of the medical opinion evidence was proper under the applicable regulations; that the ALJ properly considered the consistency and supportability factors in finding the opinion of Dr. Geary to be unpersuasive and finding the opinion of agency psychologist Elizabeth Covey, Psy.D., to be persuasive; and that the ALJ cited substantial evidence in the record to support these findings. (Def. Br. at 7–17.) The Court agrees with Defendant.

Dr. Geary issued a report providing his medical opinions based on an in-person evaluation of Plaintiff on January 29, 2019 and his review of records provided by Plaintiff's counsel. (R. at 542–48.) Summarizing his impressions, Dr. Geary opined that Plaintiff is "significantly impacted by deficits in his ability to attend to and sustain focus on information and to deflect distractions," which in turn affects his memory and ability to focus. (R. at 548.) Dr. Geary concluded that Plaintiffs' ADHD "poses an enormous hindrance for him." (*Id*.) He provided further opinions regarding Plaintiff's depressive attitude and withdrawn affect. (*Id*.) He found that Plaintiff's conditions met the criteria in Listings 12.04 Depressive Disorders, 12.06 Anxiety Disorders, and 12.11 ADHD. (*Id*.) He opined that Plaintiff has been significantly limited in his ability to remember and carry out job directives, perform independently without extensive supervision, deal with the public, cope with work stress and pressure, and maintain sufficient persistence, pace, and concentration in an employment context since June 2015. (R. at 548, 550-51.)

The ALJ found Dr. Geary's opinions unpersuasive. (R. at 37.) In explaining this conclusion, the ALJ evaluated the support for Dr. Geary's opinions and their consistency with other evidence in the record, as required under the applicable regulations. For

example, the ALJ noted that Dr. Geary's assessment of Plaintiff's mental limitations were belied by Plaintiff's employment history. (R. at 37–38.) Whereas Dr. Geary opined that Plaintiff's mental limitations dated from June 2015 to the present (R. at 552), Plaintiff's earning record shows he was engaged in substantial gainful activity until August 2016. (R. at 203.) It follows that to the extent the limitations assessed by Dr. Geary existed prior to August 2016, they did not preclude Plaintiff from substantial gainful activity during that time. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding claimant's work history supported ALJ's decision where it showed he was gainfully employed despite claiming lifelong mental and physical issues). The ALJ reasonably concluded that Dr. Geary's opinions were inconsistent with other evidence in the record—including other evidence in Dr. Geary's report. (R. at 37–38.) For example, Dr. Geary noted aspects of Plaintiff's lifestyle and daily activities, such as caring for his children and helping his wife teach English diction classes online,[1] that the ALJ found were inconsistent with Dr. Geary's conclusions about Plaintiff's limitations. (*Id.*) *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of physician's opinions about claimant's restrictions because they were inconsistent with the claimant's level of activity in "maintaining a household and raising two young children, with no significant assistance").

Plaintiff emphasizes the limitations that Dr. Geary assessed with respect to Plaintiff's memory and concentration. (*See* Pl. Br. at 9–13 (citing R. at 543–48, 550–51, 638).) However, the ALJ found that Dr. Geary's assessments were inconsistent with Plaintiff's treatment records, which "indicate normal memory and concentration on mental status exams." (R at 37–28.) For example, Plaintiff's primary care provider's clinical notes dated December 17, 2018 indicate "normal memory" and "normal mood," while also noting "attention issues." (R. at 463.) This is consistent with observations by mental health

---

[1] Plaintiff argues that "[t]here is simply not enough information in the record about this activity for the ALJ to have concluded that it conflicts with Dr. Geary's opinion." (Pl. Br. at 13.) It is true that the record is not clear on exactly how Plaintiff assists his wife with the online classes. According to Dr. Geary, Plaintiff stated that "on Tuesday through Friday, I get up about 2:30 a.m. to help my wife teach Chinese kids American diction on-line. I set up the computer for her." (R. at 545.) Even if this description represents the full extent of Plaintiff's involvement in this activity, it still provides support for the ALJ's conclusion that the activity is inconsistent with Dr. Geary's opinions regarding Plaintiff's limitations.

providers that Plaintiff's memory was intact during six clinical visits from November 22, 2016, to March 22, 2018. (R. at 298, 304, 310, 315, 320, 327.) With respect to Plaintiff's ability to focus, Dr. Geary noted that Plaintiff's concentration was satisfactory during the evaluation with the exception of interruptions by his son. (R. at 543.) In short, while a different factfinder may have evaluated Dr. Geary's opinions differently, the Court cannot say the ALJ rejected Dr. Geary's opinions "without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

The ALJ did not err in considering the other medical opinion evidence. The ALJ found the opinion of consultative examiner Erica Neal to be unpersuasive, finding her opinion that claimant's conditions did not pose significant limitations inconsistent with the evidence, "which supports some functional limitations." (R. at 38.) By contrast, the ALJ found Dr. Covey's prior administrative medical findings persuasive after evaluating whether they were supported by, and consistent with, the medical record. (R. at 37.) Plaintiff points out that Dr. Geary provided follow-up reports stating his disagreement with the opinions of the SSA's evaluators (Pl. Br. at 12; *see* R. at 637–39), including a report by A. Lizarraras, M.D., dated May 15, 2019, which found only moderate limitations with respect to Plaintiff's memory. (R. at 112–13.). Dr. Geary critiqued Dr. Lizarraras's report and explained why his findings were more accurate and better supported. (R. at 638–39.) However, the ALJ stated she found Plaintiff's mental health treatment records, which included the observations that Plaintiff's memory was intact, to be more reliable than Dr. Geary's opinions, which were inconsistent with other evidence in the record. (R. at 38.)

The Court is not tasked with comparing the different medical opinions and independently evaluating them; it may set aside an ALJ's determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn*, 495 F.3d at 630. Because the ALJ's findings regarding the medical opinion evidence are supported by substantial evidence and free of legal error, the Court must defer to the ALJ's interpretation of the information presented and the persuasiveness of the opinions given. For these reasons, the Court cannot conclude that the ALJ erred in evaluating this evidence.

**B.     The ALJ Did Not Err in Evaluating Plaintiff's Symptom Testimony.**

Plaintiff next argues that the ALJ improperly rejected his testimony regarding the intensity and persistence of his symptoms without providing specific, clear and convincing reasons supported by substantial evidence for doing so. (Pl. Br. at 14–16.) Defendant contends that the ALJ properly considered Plaintiff's symptom testimony and provided valid and sufficient reasons, supported by substantial evidence, for rejecting it. (Def. Br. at 18–22.) The Court agrees that the ALJ did not err in evaluating Plaintiff's testimony.

An ALJ performs a two-step analysis to evaluate a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates "'whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). If the claimant presents such evidence, then "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) ("[W]e require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

Plaintiff argues that the ALJ failed to specify the testimony she found not credible and failed to point to specific evidence in the record to support her reasons for rejecting his testimony. (Pl. Br. at 14–16.) On the contrary, the ALJ assessed the credibility of Plaintiff's testimony and compared his allegations regarding his symptoms with evidence in the record, including physical and mental examination findings, treatment records, Plaintiff's prior inconsistent descriptions of his symptoms, his employment history, and information about his daily activities. (R. at 34–36.) The ALJ explained how the inconsistencies between this evidence and Plaintiff's testimony supported her conclusions as to why specific portions of his testimony regarding the intensity, persistence, and limiting effects of his symptoms were not persuasive. (*Id.*) For example, the ALJ cited medical evidence

- 9 -

in the record regarding Plaintiff's mental status examinations that revealed adequate grooming and hygiene (R. at 35 (citing Ex. 1F/2-3, 15, 20, 25, 32)), which undermined Plaintiff's testimony about his poor hygiene. (*See, e.g.*, R. at 61, 72.)

Plaintiff notes that the ALJ relied in part on Plaintiff's occasional non-compliance with taking his medications in finding that his reported symptoms may not have been as severe as he alleged. (Pl. Br. at 15.) Plaintiff counters that his occasional noncompliance is not a "willful choice," but an effect of his poor memory. (*Id.*) However, the specific reason for Plaintiff's non-compliance does not affect the ALJ's overall findings that Plaintiff's symptoms responded to treatment and may not have been as serious as Plaintiff alleged. *Cf. Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted). And to the extent Plaintiff claimed that his poor memory caused his failure to refill his medications (R. at 76), as noted, treatment records support the ALJ's finding that Plaintiff's memory is not as impaired as he claimed. (*See* R. at 298, 304, 310, 315, 320, 327.)

### C. The ALJ Did Not Commit Reversible Error In Evaluating the Lay Witness Testimony of Plaintiff's Wife.

Plaintiff contends that the ALJ improperly rejected the lay witness testimony of his wife, Ms. Wheat, without providing sufficient reasons for doing so. (Pl. Br. at 14–15.) "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citations omitted). To properly disregard such testimony, an ALJ must provide reasons for doing so that are specific and "germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). This rule also applies to written statements. *See, e.g.*, *Schneider v. Comm'r of Social Sec. Admin.*, 223 F.3d 968, 974–75 (9th Cir. 2000).

There is merit to Plaintiff's argument. As Plaintiff notes, the ALJ addressed Ms. Wheat's testimony merely by stating that "[t]he undersigned appreciates her concern for the claimant's well-being, but her statements are not persuasive of additional

restrictions in the RFC. Further, the extreme limits are not supported by the medical evidence of record." (R. at 38.) Though not entirely lacking, this explanation was not thorough.

However, the Court need not remand or reverse an ALJ's decision if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and quotation marks omitted). When the ALJ fails to give specific reasons for rejecting lay testimony but gives sufficiently specific reasons for rejecting similar testimony by the claimant, the error may be harmless if "the ALJ's reasons for rejecting [the plaintiff's] testimony apply with equal force to the lay testimony." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

Here, any error was harmless because Ms. Wheat's testimony described functional limitations similar to those to which Plaintiff testified. For example, Ms. Wheat stated Plaintiff needs prompting to maintain hygiene. (R. at 219.) She stated Plaintiff prepares meals with her, does light housework twice a week, and helps with grocery shopping. (R. at 220, 221.) Finally, she stated that Plaintiff's depression, anxiety and ADHD have continued to impact his daily activities. (R. at 225.) The limitations that Plaintiff's wife described in her statement are similar to those to which Plaintiff testified during the hearing (*See* R. at 56, 68, 72, 74) and described in his own written statement. (*See* 228, 229, 231.) Because, as noted above, the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony, those reasons are equally sufficient to reject Ms. Wheat's testimony.

### D. The ALJ Did Not Err In Relying On Vocational Expert Testimony Given In Response To A Purportedly Incomplete Hypothetical Question.

Finally, Plaintiff argues that the ALJ's step-five finding is not supported by substantial evidence because the ALJ relied on vocational expert testimony given in response to hypothetical questions that omitted Plaintiff's and Ms. Wheat's allegations regarding his symptoms and the limitations assessed by Dr. Geary. (Pl. Br. at 17–18.)

As Plaintiff notes, hypothetical questions posed to a vocational expert must contain all of a claimant's limitations that are supported by substantial evidence. *Magallanes*, 881

F.2d at 756. But in posing hypotheticals, "the ALJ must only include those limitations that are supported by substantial evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted). Here, there was substantial evidence to support the ALJ's findings that Dr. Geary's medical opinions, Plaintiff's symptom testimony, and Ms. Wheat's written statement were unpersuasive and inconsistent with other evidence in the record. Accordingly, the hypothetical questions that the ALJ posed for the vocational expert properly included only those limitations the ALJ found were supported by substantial evidence, and did not include those the ALJ found were not supported by substantial evidence—such as the limitations cited by Plaintiff. Thus, the ALJ did not err.

**IT IS THEREFORE ORDERED** affirming the August 17, 2020 decision of the Administrative Law Judge (R. at 28–41) as upheld by the Appeals Council on January 21, 2021. (R. at 10–12).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 4th day of January, 2023.

Honorable John J. Tuchi
United States District Judge